IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Melissa O. Weems,

      Plaintiff,

     v.                      Case No. 2:05-cv-87

City of Columbus, Ohio,
et al.,

      Defendants.

<u>OPINION AND ORDER</u>

This is an employment discrimination action filed on January 26, 2005, by plaintiff Melissa O. Weems against the City of Columbus, Ohio ("the City") and Raymond K. Hamilton. Plaintiff, an African-American female, asserts claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e <u>et</u> <u>seq</u>., and 42 U.S.C. §1983. Plaintiff is an employee of the Columbus Department of Public Safety, Division of Police, and during the relevant time period, Sergeant Hamilton was her immediate supervisor. According to the complaint, Sergeant Hamilton is named as a defendant in his official and individual capacities.

Plaintiff alleges that since May of 2000, she has been an police officer employed in the Operations Unit of the Advanced Training Bureau, which is responsible for teaching police officers in four phases throughout the year. Complaint, ¶¶ 9-10. She alleges that she was treated differently compared to similarly situated male Caucasian officers because she was not asked to participate in Phase III training which was announced on July 25, 2002. Complaint, ¶¶ 14-15. She further alleges that on March 31, 2003, she was given the assignment of developing a radio training

program which she characterized as clerical work, that other officers were given substantive assignments relevant to training, and that she was the only officer given a specific and short deadline. Complaint, ¶¶ 17-22.

Plaintiff further alleges that on May 19, 2003, a request was made by Division Commander Lieutenant Bowling to identify acceptable candidates for DTU instructors, and that defendant Hamilton responded that plaintiff "does not have the needed qualities to serve, and has not expressed any desire to participate." Complaint, ¶ 23. Plaintiff alleged that she was better qualified than her male Caucasian counterparts due to her previous military training, and that she was never asked if she would be interested in participating. Complaint, ¶¶24-25.

Plaintiff further alleges that she was not given any responsibility for any part of the Phase III training which began on July 1, 2003. Complaint, ¶ 26. She alleges that on February 25, 2004, defendant Hamilton sent an e-mail to every officer but her regarding preparation for training, and that while others were working on substantive assignments, she was asked to do a clerical project. Complaint, ¶¶ 31-32. Plaintiff claims that her requests for additional training were denied while Caucasian male co-workers were approved to attend courses in New Mexico and Houston. Complaint, ¶ 33.

Plaintiff contends that on October 16, 2003, she filed an EEO complaint with Melvin Richardson of the City's EEO Office about co-workers allegedly isolating her and sending racially insensitive e-mails. Complaint, ¶¶34-35. As an example, plaintiff complained that a co-worker would "pass gas" near her desk. Complaint, ¶ 36.

Plaintiff further alleges that on October 21, 2003, she informed defendant Hamilton that she had filed an EEO complaint, and that he became angry and threatened her, and gave her three unreasonable work assignments.  Complaint, ¶¶ 37-38.  Plaintiff later filed a formal EEO complaint with the Ohio Civil Rights Commission.  Complaint, ¶ 42.  On October 25, 2004, the EEOC issued a right to sue letter on plaintiff's EEO charge.  On October 20, 2004, defendant Hamilton filed an action against plaintiff in the Common Pleas Court of Franklin County, Ohio, asserting claims for defamation and infliction of emotional distress.  That action is still pending.

In Count One of the complaint, plaintiff alleges that she was exposed to a hostile work environment and that she was subjected to continuous, severe, pervasive and abusive harassment by defendant Hamilton.  In Count Two of the complaint, plaintiff alleges that she was treated differently than similarly situated male Caucasian co-workers on the basis of her race.  In Count Three of the complaint, plaintiff alleges that she was treated differently on the basis of her sex.  In Count Four of the complaint, plaintiff asserts a claim of retaliation for filing her EEO complaints.  In Count Five, plaintiff asserts a claim of intentional infliction of severe emotional distress under Ohio law.

This matter is before the court on the defendants' motions for summary judgment.  The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex and Matsushita effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.

4

Id.  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).  Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  Id.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

In opposition to defendants' motions for summary judgment, plaintiff has submitted unauthenticated documents and an affidavit which is not notarized and which contains a typed signature. Defendants object to this evidence and argue that it cannot be considered.  Defendants also argue that plaintiff's affidavit includes inadmissible hearsay and conclusory statements which are insufficient to oppose summary judgment.

It is well settled that only admissible evidence may be considered in ruling on a motion for summary judgment.  Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994).  Hearsay evidence may not be considered on a motion for summary judgment.  Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999).  A party opposing a motion for summary judgment cannot use inadmissible evidence such as hearsay or evidence not based on personal knowledge to create a genuine issue of material fact.  Sperle v. Michigan Department of Corrections, 297 F.3d 483, 495 (6th Cir. 2002); Weberg v. Franks, 229 F.3d 514, 526 N. 13 (6th Cir. 2000).  Non-specific, conclusory statements will not overcome a properly supported motion for summary judgment.  Hunter v. Trussel, No 2:03-cv-972, 2006 WL 1209374 at *7 (S.D.Ohio May 2,

2006).  An affidavit which contains "nothing more than rumors, conclusory allegations and subjective beliefs ... [is] wholly insufficient to establish a claim as a matter of law." Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992).

An unsworn or unsigned affidavit cannot be used to oppose a motion for summary judgment. Nassif Insurance Agency, Inc. v. Civic Property and Casualty Co., No. 03-2618, 2005 WL 712578 at *3 (6th Cir. March 30, 2005); Pollock v. Pollock, 154 F.3d 601, 612 n. 20 (6th Cir. 1998).  Although an unsworn affidavit may qualify as an unsworn declaration under 28 U.S.C. §1746, such affidavits must be signed, in writing, and dated, and must verify that its content is "true under penalty of perjury."  28 U.S.C. §1746; Pollock, 154 F.3d at 612 n. 20.  Under the local rules of this court, affidavits which are not notarized or which contain an electronic signature instead of the actual signature of the affiant are not properly signed, and therefore are not proper evidence under Rule 56. See Watson v. City of Mason, No. C1-04-283, 2005 WL 3018690 at *9-10 (S.D.Ohio Nov. 9, 2005); S.D. Ohio Local Rule 1.1(e); Electronic Filing Policies and Procedures Manual, Rule C, Signatures.

To be admissible in summary judgment proceedings, documents must be authenticated by and attached to an affidavit. Steele v. Jennings, No. 2:04-cv-189, 2005 WL 2124152 at *3 (S.D.Ohio Aug. 31, 2005); Williams v. United Dairy, Inc., No. 2:03-cv-868, 2005 WL 1077596 at *5 (S.D.Ohio April 18, 2005).  "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Robinson v. Bodoff, 355 F.Supp.2d 578, 582 (D.Mass. 2005). See also Lomax v. Sears, Roebuck & Co., 2000 WL 1888715 at *5 (6th Cir. 2000).

In this case, plaintiff has attached documents to her memoranda contra which have not been authenticated in any way. She has also submitted an affidavit which bears only typed electronic signature. Although the affidavit states that plaintiff was "duly sworn upon oath," it is not notarized. It is not dated or signed with a written signature, and does not indicate that the statements are "true under penalty of perjury." Therefore, it does not qualify as an unsworn declaration. The affidavit also includes hearsay and statements which are conclusory or not shown to be based on personal knowledge. Plaintiff's exhibits and affidavit are not competent evidence for purposes of summary judgment, and defendants' objections to this evidence are well taken. However, even if that evidence is considered along with the other evidence in the record, it is insufficient to withstand summary judgment in this case.

I. Plaintiff's Claims

In Counts One through Four of plaintiff's complaint, plaintiff alleges that the conduct at issue violated Title VII. In ¶ 1 of the complaint, she also identifies 42 U.S.C. § 1983 as a basis for her action, asserting that constitutional rights protected by the Fourteenth Amendment were violated. The complaint does not clearly state if she is pursuing claims under Title VII and §1983 against both the City and defendant Hamilton. In the event that the complaint is construed as alleging both Title VII and §1983 claims against the City, the City has moved for summary judgment on the §1983 claims.

A municipality may only be held liable for civil rights violations if the municipality itself causes the constitutional

deprivation.  <u>Monell v. Department of Social Serv.</u>, 436 U.S. 658 (1978).  The doctrine of <u>respondeat superior</u> liability is inapplicable in §1983 actions.  <u>Id</u>. at 691-95.  A municipality is liable for the acts of its employees only where the violation of the plaintiff's constitutional rights stems from a governmental policy or custom.  <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989).  The plaintiff must establish that the municipal action was taken with "deliberate indifference" to its known or obvious consequences.  <u>Id</u>. at 388.

To sustain liability, plaintiff must first show that her constitutional rights were in fact violated by the municipal employees.  <u>Ewolski v. City of Brunswick</u>, 287 F.3d 492, 516 (6th Cir. 2002).  Plaintiff must then show that the City's policy or custom was the moving force of the constitutional violation.  <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981).  <u>See also</u> <u>Board of County Commrs. of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 404 (1997)(plaintiff must demonstrate a direct causal link between the municipal action and a deprivation of federal rights); <u>Garner v. Memphis Police Dept.</u>, 8 F.3d 358 (6th Cir. 1993)(plaintiff must identify policy at issue, connect the policy to the governmental body, and show that injuries were incurred because of the execution of the policy.)

A single decision by a decision maker with final authority in the relevant area may constitute a "policy" attributable to the municipality.  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986).  However, the municipality is liable for an official's unconstitutional action only when the official is the one who has the final authority to establish municipal policy with respect to

8

the action ordered.  *Id.* at 481.  Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988).

There is no evidence in this case that any of the acts alleged in plaintiff's complaint, even assuming they occurred, were the result of a municipal policy or custom.  There is also no evidence that defendant Hamilton and any other supervisors allegedly involved in any act affecting plaintiff's employment were acting as policymakers.  The record fails to support any basis for municipal liability under §1983 against the City.  Therefore, the federal claims against the City will be addressed as Title VII claims.

Defendant Hamilton correctly argues that he cannot be found liable under Title VII.  It is well established that individual supervisors and employees are not subject to liability under Title VII.  <u>Weberg v. Franks</u>, 229 F.3d 514, 522 n. 7 (6th Cir. 2000); <u>Wathen v. General Electric Co.</u>, 115 F.3d 400, 405 (6th Cir. 1997).  Therefore, the federal claims against defendant Hamilton will be addressed as claims under §1983.  Defendant Hamilton also correctly notes that the statute of limitations for a §1983 action is two years.  <u>Browning v. Pendleton</u>, 869 F.2d 989 (6th Cir. 1989).  Since the complaint in this case was filed on January 26, 2005, to the extent that plaintiff's claims are based on acts which allegedly occurred prior to January 26, 2003, they are barred by the statute of limitations.

<u>II. Hostile Work Environment</u>

In Count One of her complaint, plaintiff asserts a claim of hostile work environment.  Although plaintiff stated in her answers to defendant Hamilton's request for admissions that Count One alleged only violations of Title VII, <u>see</u> Request for Admissions, Answer No. 4, in her memorandum contra defendant Hamilton's motion for summary judgment, she now argues this claim against him under §1983.

The standards for making out a prima facie case of hostile work environment under Title VII also apply to a hostile work environment claim under §1983.  <u>Boutros v. Canton Regional Transit Auth.</u>, 997 F.2d 198, 202 (6th Cir. 1993).  To establish a prima facie case of a hostile work environment based on sex or race under Title VII, plaintiff must show that:

> (1) she is a member of a protected class;
>
> (2) she was subjected to unwelcome sexual or racial harassment;
>
> (3) the harassment was based on her sex or race;
>
> (4) the harassment created a hostile work environment; and
>
> (5) the employer is vicariously liable.

<u>Clark v. United Parcel Service, Inc.</u>, 400 F.3d 341, 347 (6th Cir. 2005).

To maintain a hostile work environment claim, the plaintiff must show that under the totality of circumstances, the alleged conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  "Title VII was not meant to create a 'general civility

code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability." Clark, 400 F.3d at 352 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment)). Personal conflict does not equate with discriminatory animus, Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000), and courts must "carefully distinguish between lawful conduct–even if insensitive–and discriminatory harassment." Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir. 2000).

The factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

The harassment should be ongoing, rather than a set of isolated or sporadic incidents. Clark, 400 F.3d at 351. Plaintiff must show that the working environment was both objectively and subjectively hostile. Harris, 510 U.S. at 21-22. A racial or sexual hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's race or gender. Jackson v. Quanex Corp., 191 F.3d 647, 662 (6th Cir. 1999).

If the harassment is caused by a co-worker, the employer is liable if it knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. Clark, 400

11

F.3d at 348.  An employer is vicariously liable for an actionable hostile work environment created by a supervisor with authority over the plaintiff unless the harassment did not result in a negative tangible employment action for the plaintiff, the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  Id.

Plaintiff offers an unauthenticated photograph of a target cutout wearing a bra which was found in a chair in the operations room on May 25, 2002, which she allegedly found to be offensive. She does not allege that the cutout was placed at her desk as a message to her personally; rather, it was apparently more in the nature of a general prank or joke.  While such conduct is in bad taste, it does not qualify as severe harassment.  The allegation in her complaint that a fellow employee "passed gas" near her desk on an unspecified number of occasions is unsupported by any evidence, and even if it occurred, it would amount at most to rude conduct, not conduct directed at plaintiff because of her race or sex.

Plaintiff also contends that she was not invited to have lunch with other members of the unit.  There is no evidence that the City controls how its employees spend their lunch hours.  Title VII and §1983 do not require all employees to associate together during their free and personal time at lunch, even if those employees occasionally and voluntarily discuss work-related matters during lunch.  The failure of other employees to include plaintiff in their lunch groups, even if it resulted in hurt feelings, does not constitute actionable harassment.  Further, even assuming that

12

plaintiff was not invited to have lunch with the other employees in her office, that fact alone does not establish that plaintiff was excluded due to her race or sex.

Plaintiff further states in her unsworn affidavit that after complaining on September 26, 2003, about the failure of her co-workers to include her in their lunch groups, one of her co-workers sent an e-mail to plaintiff and other employees with an article discussing free association. Plaintiff contends that she found this article to be racially offensive. The article talks about the concept of freedom of association in general terms, and does not focus exclusively on factors such as race or sex. It cannot be determined from the text of the article alone that the employee who sent the e-mail intended to send plaintiff the message that he did not want to associate with her at lunch because of her race or sex, as opposed to some other reason. The article did not contain racially derogatory epithets. This act does not rise to the level of severe harassment.

The incidents about which plaintiff complains were isolated and sporadic. They did not involve physically threatening acts, nor were they severe. There is no evidence that any of these acts interfered in any way with plaintiff's work performance. There is no evidence that defendant Hamilton had any involvement in the above alleged acts.

As further alleged harassment, plaintiff also contends that on August 28, 2002, defendant Hamilton stated that plaintiff was not teaching in the 2002 Phase III training because she was "out to lunch." She complains that she was not given other training assignments in the winter of 2003. She alleges that defendant

Hamilton threatened her with possible charges for dereliction of duty, theft in office, and completing outside school work while on duty.  Plaintiff also alleges that when she informed defendant Hamilton that she had filed a discrimination charge, he used profanity and told her that there would be serious consequences. Plaintiff asked if he was threatening her, and he stated "no." Plaintiff told him that she wasn't scared and that he wasn't going to intimidate her.  <u>See</u> Defendant Hamilton's Motion for Summary Judgment, Ex. 6, Plaintiff's October 30, 2003, memorandum to Chief Jackson.  Plaintiff notes that defendant Hamilton later filed an action against her for defamation.  She also alleges that defendant Hamilton imposed unreasonable deadlines on three assignments.

The incidents which occurred prior to January 26, 2003, such as defendant Hamilton's refusal to assign plaintiff to training because she was "out to lunch," are outside the limitations period and cannot form a basis for plaintiff's §1983 claim.  In any event, the isolated use of profanity or derogatory language referred to above is not sufficient to constitute severe harassment.  There is no evidence to support plaintiff's claim that the failure to give her certain training assignments was motivated by a desire to harass plaintiff based on her sex or race.  Even assuming that defendant Hamilton threatened the possibility of charges against plaintiff for dereliction of duty, theft in office and completing school work while on duty, there is no evidence that such charges would have been unfounded, or that raising the possibility of charges was for the purpose of harassing plaintiff based on her race or sex.  The defamation action filed by defendant Hamilton cannot constitute harassment since defendant Hamilton filed the

14

action as a private citizen, not in his capacity as plaintiff's supervisor or as an employee of the City. In any event, that action is still pending, and has not been shown to be frivolous or malicious. As to the three work assignments, there is no evidence that plaintiff was unable to complete the assignments, or that she suffered any adverse job action as a result of the assignments. The evidence also fails to show that they were anything other than an isolated instance. The evidence is insufficient to create a genuine issue of fact on the question of whether defendant Hamilton engaged in any actionable harassment.

It is also unclear to what extent, if any, the City was informed of the alleged acts of harassment. Although plaintiff filed an informal EEO complaint in October of 2003, that complaint has not been included in the record, and it is not clear what acts of alleged harassment were included in the complaint. The only evidence of the proceedings before the EEO officer is Exhibit F to plaintiff's memorandum contra the City's motion for summary judgment, an unauthenticated memorandum from Commander Larry Rod to Lieutenant Chris Bowling and defendant Hamilton dated October 24, 2003. This memorandum refers to the photograph of the target cutout wearing the bra, the freedom of association e-mail, and the training assignments. Even if this memorandum is considered, it demonstrates that Commander Rod was taking plaintiff's allegations seriously and investigating the allegations. The evidence is insufficient to establish liability on the part of the City for the alleged hostile work environment.

Plaintiff has failed to produce evidence sufficient to create a genuine issue of fact on her hostile work environment claim.

15

Even if plaintiff's inadmissible evidence is considered, the evidence in the record fails to show that plaintiff was exposed to severe or pervasive discriminatory intimidation, ridicule, or insult sufficient to alter the conditions of plaintiff's employment or to create an abusive working environment, considering the totality of the circumstances. Defendants are entitled to summary judgment on the hostile work environment claim.

III. Disparate Treatment

In Count Two of the complaint, plaintiff alleges that she was treated differently than similarly situated male Caucasian co-workers on the basis of her race. In Count Three of the complaint, plaintiff alleges that she was treated differently on the basis of her sex. Although plaintiff stated in her answers to defendant Hamilton's request for admissions that Counts Two and Three alleged only violations of Title VII, see Request for Admissions, Answer No. 4, in her memorandum contra defendant Hamilton's motion for summary judgment, she asserts these claims against him under §1983.

To establish a prima facie case of disparate treatment under Title VII, plaintiff must prove: (1) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently from similarly situated non-minority employees. Perry v. Mcginnis, 209 F.3d 597, 601 (6th Cir. 2000). A plaintiff asserting a Fourteenth Amendment equal protection claim under §1983 must prove the same elements required to establish a disparate treatment claim under Title VII. Id. An adverse employment action is a "materially adverse change in the terms and conditions of employment." Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th

16

Cir. 1999). A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742, 761 (1998). <u>De</u> <u>minimis</u> employment actions are not actionable, and the change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 462 (6th Cir. 2000); <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 886 (6th Cir. 1996).

Plaintiff acknowledges that she has not been demoted, that her wages and benefits have not been decreased, and that she has suffered no loss of position on the occasions she was not assigned teaching responsibilities. Plaintiff complains that she was not permitted to participate in certain Phase III training. However, the City has presented evidence that other male Caucasian officers in plaintiff's office did not participate in Phase III training. <u>See</u> Jean M. Byrn Affidavit, Ex. C to the City's motion for summary judgment. The evidence indicates that at the time in question, there were at least ten officers in the Operations and Administrative Units of the Advanced Training Bureau during plaintiff's shift, and only four of them participated in Phase III training for 2003. The fact that plaintiff was not given the opportunity to participate in every assignment in the office is not sufficient in itself to demonstrate discrimination based on sex or race. Plaintiff has also failed to produce evidence other than her own conclusory opinion to show how her failure to participate in Phase III training constituted a significant diminishment of her

17

job responsibilities.

Plaintiff further alleges that the fact that she was not permitted to participate in training deprived her of overtime opportunities.  Plaintiff has submitted no admissible evidence on this issue.  She states in her unsworn affidavit that defendant Hamilton frequently authorized overtime pay for officers preparing for training phases.  The fact that officers working training assignments were authorized to work overtime on occasion did not require the City to give every employee training assignments. Plaintiff does not offer evidence that similarly situated non-minority employees who were not currently working training assignments were given overtime pay, while overtime was not authorized for her performance of similar work.

The record shows that on one occasion on October 24, 2003, plaintiff asked Lieutenant Bowling, in defendant Hamilton's absence, to approve overtime so that she could complete an assignment.  Lieutenant Bowling responded that overtime was not approved "as it is being severely curtailed."  Plaintiff has produced no evidence that other non-minority employees were approved for overtime during this same period.  In light of plaintiff's failure to produce evidence on the issue of overtime other than her own unsworn and unsigned affidavit, no genuine issue of fact has been shown to exist.  See Broska v. Henderson, 70 Fed.Appx. 262, 268 (6th Cir. 2003)(upholding summary judgment where plaintiff produced no evidence other than a conclusory statement in his affidavit concerning the alleged denial of overtime opportunities).

Plaintiff also asserts that she was not permitted to

18

participate in DT Unit training.  The record reveals that on May 19, 2003, Commander Larry Rod sent an e-mail to Lieutenant Bowling requesting that he identify acceptable candidates to become instructors in the DT Unit.  Lieutenant Bowling sent a return e-mail to Commander Rod concerning each employee of the Operations and Administrative Units.  He noted that plaintiff "does not have the needed qualities to serve, and has not expressed any desire to participate."  When Lieutenant Bowling became aware of the fact that all of the employees were aware of the e-mail, he sent another e-mail stating that anyone could volunteer to be a DT instructor, that he had made his recommendations based on what he had seen and heard from personnel in the section, and that if he had missed something, to let him know.  One employee, Officer Scott Mikesell, responded that he had expressed an interest in this type of training and that he was no longer under a medical restriction. Despite the invitation to all of the employees in the unit to apply for DT Unit training duties or to express disagreement with the lieutenant's assessment of their capabilities, there is no evidence that plaintiff responded to the e-mail, or that she ever indicated an interest in participating in DT Unit training to her supervisors.

Plaintiff states that on one occasion, she was given an assignment which amounted to retyping a document in lesson plan format.  On March 31, 2003, plaintiff was told to draft lesson plans for a radio training program which included creating scenarios, such as a burglary detective's response to a scene, identifying the challenges and concerns of opponents to the training program, identifying positive aspects of the program, and

19

drafting at least three examples of expected dialogue. Plaintiff alleges that this assignment was "clerical" in nature and lacked substance. On its face, the assignment appears to be far more than merely clerical in nature. In addition, the fact that plaintiff's opinions differ from those of her supervisors as to what types of jobs are important or necessary is insufficient to establish that plaintiff's assignments amounted to an adverse job action. See Kinamore v. EPB Electric Utility, 92 Fed.Appx. 197 (6th Cir. 2004)(assignment of temporary task described by plaintiff as "menial" not sufficient to constitute an adverse job action).

Plaintiff also states in her unsworn affidavit that her sole responsibility was the Citizens Police Academy ("CPA"), a public relations program in which Department of Public Safety officials speak to community volunteers about police practice over a nine-week period in the spring and fall. She claims that the CPA is a less distinguished assignment than being an instructor in the Advanced Training Section, but offers no evidence other than her own conclusory opinion on this point. In fact, in an e-mail to defendant Hamilton dated September 26, 2003, Exhibit C to plaintiff's memorandum contra the City's motion for summary judgment, plaintiff stated that she enjoyed doing the CPA and YCPA and would like to continue them.

Plaintiff contends that she was not permitted to attend the 7th Annual National Citizen's Police Academy Training Conference scheduled on April 14-17, 2004. However, the Sixth Circuit has stated that "decisions to deny or grant training or to permit attendance at seminars clearly fall within the realm of the employer's business judgment." Vitt v. City of Cincinnati, 97

20

Fed.Appx. 634, 640 (6th Cir. 2004).

The evidence in the record fails to show the existence of a genuine issue of material fact on plaintiff's disparate treatment claims against the City and defendant Hamilton.  Defendants are entitled to summary judgment on plaintiff's disparate treatment claims.

IV. Retaliation

In Count Four of the complaint, plaintiff asserts a claim of retaliation for filing her EEO complaints.  Plaintiff's retaliation claim against the City is based on Title VII.  In fact, a cause of action for retaliation in violation of Title VII is based exclusively on Title VII, and may not be pursued under §1983.  Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984)(Title VII provides the exclusive remedy when cause of action is based on violation of Title VII).

To make a prima facie case of Title VII retaliation against the City, plaintiff must prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the employer; (3) the employer thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).  The adverse employment action must be materially adverse; de minimis employment actions are not materially adverse and are not actionable.  Ford, 305 F.3d at 553.

Plaintiff contends that after she informed defendant Hamilton about her charge of discrimination, he gave her three assignments

21

with unreasonable due dates.  One of these projects, assigned on October 22, 2003, was to prepare a notebook of all CPA activities designed to assist another officer to assume the role of CPA coordinator in the event plaintiff was unavailable.  Defendant Hamilton specified that the notebook should include a course syllabus and schedule, sample letters, applications and evaluations, and an itemization of steps taken to ensure that proper CPA candidates are selected and to produce a CPA class.  The information was due on October 27, 2003, but defendant Hamilton later extended the due date to October 31, 2003.

Another task was assigned as the result of plaintiff's e-mail to defendant Hamilton dated October 16, 2003, concerning media enquiry about the Safe Escape program in schools.  On October 22, 2003, defendant Hamilton stated by e-mail that he was not familiar with the program, and he asked plaintiff to prepare a written report about the program, describing its objectives, time commitment and how it differs from the DARE program.  He requested this report by October 31, 2003.  Lieutenant Bowling then sent an e-mail indicating that plaintiff should also draft a letter to Chief Jackson concerning the program, and on October 27, 2003, defendant Hamilton e-mailed plaintiff to inform her that the letter should also be completed by October 31, 2003.  Plaintiff completed the letter on October 30, 2003, and the report on October 31, 2003.

These assignments are insufficient to constitute adverse job actions.  The evidence is insufficient to establish that these assignments were unreasonable.  There is no evidence that plaintiff was unable to complete the assignments on time, or that she was in any way disciplined for her performance in regard to these

assignments.

Plaintiff also alleges that she was assigned to teach a third shift class in retaliation for her complaints of discrimination. Plaintiff was notified by e-mail from defendant Hamilton dated February 25, 2004, that she was being assigned to teach a third shift class from March 15, 2004 until April 15, 2004, which required her to work from 10:00 p.m. until 8:00 a.m. instead of her usual shift from 7:00 a.m. to 3:00 p.m.  The e-mail indicated that if no person volunteered for the change in shift, then the least senior person would be required to deviate work hours for that training, thus resulting in plaintiff's assignment to this shift.

The temporary assignment to another shift is insufficient to constitute an adverse job action.  Plaintiff did not lose any pay or benefits as a result of this temporary transfer.  In fact, the e-mail also stated that plaintiff would be paid premium pay for each shift worked during the temporary assignment.  In addition, the circumstances of the assignment are insufficient to raise an inference of discriminatory motive.  Plaintiff was given the assignment because she was the least senior member of the unit and no other employee volunteered for the shift change.  Plaintiff has failed to produce evidence sufficient to support her claim of retaliation against the City.

Defendant Hamilton argues that since he cannot be held liable under Title VII as a supervisor, plaintiff may not assert a claim against him under Title VII.  Plaintiff argues for the first time in her memorandum contra the motion for summary judgment that defendant Hamilton may be liable for retaliation under Ohio Rev. Code §4112.02(I), and under §1983 for retaliation against plaintiff

for her exercise of First Amendment rights.

Plaintiff did not assert a claim under §4112.02 in her complaint, and may not do so belatedly for the first time in response to defendant Hamilton's motion for summary judgment. In any case, §4112.02(I) prohibits discrimination because the employee has "made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." This language has been construed as prohibiting retaliation for participation in proceedings under Ohio Revised code Chapter 4112, but not retaliation for filing federal claims under Title VII. See Crawford v. Medina General Hospital, No. 2604-M, 1997 WL 537675 (Ohio App. 9th Dist., Aug. 20, 1997). There is no evidence that plaintiff ever pursued any administrative remedies under §4112.02.

The First Amendment protects a government employee from retaliation for complaints about discriminatory employment practices, which are a matter of public concern. Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 168 (6th Cir. 2004); Perry v. McGinnis, 209 F.3d 597, 604 (6th Cir. 2000). Plaintiff did not specifically refer to the First Amendment in her complaint. However, even assuming that plaintiff can now rely on the First Amendment as a basis for a §1983 claim against defendant Hamilton, she has not shown that she can establish a prima facie case.

To establish a prima facie case of retaliation in violation of the First Amendment, plaintiff must show that: (1) she was engaged in a constitutionally protected activity; (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to

engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. <u>Mattox v. City of Forest Park</u>, 183 F.3d 515, 520 (6th Cir. 1999).

Here, plaintiff has failed to show an adverse employment action that is tantamount to a "'materially adverse change in the terms of her employment.'" <u>Birch</u>, 392 F.3d at 169 (quoting <u>Kocsis</u>, 97 F.3d at 885). As noted previously the work assignments and her temporary assignment to third shift are insufficient to qualify as adverse employment actions. Plaintiff states that defendant Hamilton became angry with her and swore at her when informed about the EEO charge. Plaintiff alleges without supporting evidence that defendant Hamilton threatened her with possible charges for dereliction of duty, theft in office, and allegedly completing outside school work on duty. There is no evidence that plaintiff was ever disciplined, or that charges were ever filed against her. Defendant Hamilton subsequently filed a defamation action against plaintiff in state court, which is still pending, but did so as a private citizen, not as plaintiff's supervisor. the filing of the defamation action was not an adverse job action. There is no evidence that the terms and conditions of plaintiff's employment changed in any way as a result of the filing of this action.

The evidence fails to show the existence of a genuine issue of material fact in regard to plaintiff's retaliation claims against the City and defendant Hamilton, and defendants are entitled to summary judgment on this claim.

<u>V. Intentional Infliction of Emotional Distress</u>

In Count Five, plaintiff asserts a claim of intentional

25

infliction of severe emotional distress under Ohio law.  The City argues that it is entitled to summary judgment on this claim on the basis of statutory immunity.  Ohio Rev. Code §2744.02(A)(1) provides that

> a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio courts have held that political subdivisions are entitled to immunity under §2744.02 for the intentional torts committed by their employees.  See Hubbard v. Canton City School Bd. of Educ., 97 Ohio St.3d 451, 453, 780 N.E.2d 543 (2002)(affirming grant of summary judgment on claim of intentional infliction of emotional distress on immunity grounds); Wilson v. Stark Cty. Dept. of Human Serv., 70 Ohio St.3d 450, 639 N.E.2d 105 (1994)(statute conferred immunity for intentional tort of intentional infliction of emotional distress).  The City is entitled to summary judgment on this claim.

Defendant Hamilton argues that he is entitled to summary judgment on this claim because it constitutes a compulsory counterclaim to the state court action which he filed against plaintiff. Ohio Civ. R. 13(A), governing compulsory counterclaims, provides in part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

26

If the requirements of Rule 13(A) are met, then the claim is a compulsory counterclaim, and the failure to file a compulsory counterclaim in an earlier action bars the claim in a later action. Geauga Truck & Implement Co. v. Juskiewicz, 9 Ohio St.3d 12, 14, 457 N.E.2d 827 (1984). In determining whether claims arise out of the same transaction or occurrence, courts apply the "logical relation" test, under which a compulsory counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Rettig Enterprises, Inc. v. Koehler, 68 Ohio St.3d 274, 278, 626 N.E.2d 99 (1994).

Here, the subject matter of plaintiff's intentional infliction of emotional distress claim, defendant Hamilton's alleged acts of discrimination, harassment and retaliation, is logically related to, and arises from the same occurrences and circumstances as defendant Hamilton's defamation claim, which alleges that plaintiff's claims of discrimination constitute defamation. Therefore, plaintiff's claim of intentional infliction of emotional distress is a compulsory counterclaim which should have been filed in the defamation action, and the claim is therefore waived. See Kane v. Magna Mixer Co., 71 F.3d 555, 561-63 (6th Cir. 1995).

Defendant Hamilton further argues that even if plaintiff's claim of intentional infliction of emotional distress is not waived, he is entitled to summary judgment on that claim. The elements of the tort of intentional infliction of emotional distress under Ohio law require plaintiff to prove: (1)that the actor either intended to cause emotional distress or knew or should

have known that actions taken would result in serious emotional distress to plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it. <u>Yeager v. Local Union 20</u>, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983); <u>Pyle v. Pyle</u>, 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (1983).  Plaintiff must have suffered severe emotional distress and not just embarrassment or hurt feelings. <u>Reamsnyder v. Jaskolski</u>, 10 Ohio St.3d 150, 264 N.E.2d 392 (1984).  Serious emotional distress is emotional injury which is both severe and debilitating. <u>Paugh v. Hanks</u>, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983).

In this case, plaintiff has not shown the existence of a genuine issue of fact on the elements of her claim.  There is no evidence of any conduct on the part of defendant Hamilton that a jury could reasonably characterize as extreme and outrageous.  In addition, there is no evidence that plaintiff sustained serious psychic injury caused by any action on the part of defendant Hamilton.  The information provided in her unsigned and un-notarized affidavit is not admissible, but even if it is considered, it is insufficient to create a genuine issue of fact.  Plaintiff states in her affidavit that her work experiences have had a negative effect on her health and have increased her blood pressure, making her existing kidney ailment worse.  She further states that on October 24, 2003, she sought mental health

28

counseling and was referred to a psychologist.  However, she does not state if or how often she actually consulted with the psychologist, and she offers no expert testimony in support of her claim.  There is no evidence that plaintiff has suffered severe emotional distress.

Ohio courts have dismissed claims by plaintiffs who never sought medical assistance for alleged emotional distress.  See Davis v. Billow Co. Falls Chapel, 81 Ohio App.3d 203, 208, 610 N.E.2d 1024, 1027 (1991); Plikerd v. Mongeluzzo, 73 Ohio App.3d 115, 126, 596 N.E.2d 601, 608 (1992).  Expert medical testimony may not always be required to support a claim of intentional infliction of emotional distress.  See Foster v. McDevitt, 31 Ohio App.3d 237, 239, 511 N.E.2d 403 (1986).  However, in such a case, plaintiff must at least present some evidence beyond her own testimony that she suffered severe emotional distress.  Buckman-Peirson v. Brannon, 159 Ohio App.3d 12, 25-26, 822 N.E.2d 830 (2004).  Plaintiff has not done so in this case.  Further, where, as here, plaintiff claims that her emotional distress aggravated existing illnesses, expert testimony is necessary to show causation because such a claim involves matters which exceed the capability of a jury of non-professionals to reasonably understand and evaluate.  Dickerson v. International United Auto Workers Union, 98 Ohio App.3d 171, 648 N.E.2d 40 (1994); Grote v. J.S. Mayer & Co., 59 Ohio App.3d 44, 47, 570 N.E.2d 1146 (1990).

Plaintiff has failed to show the existence of a genuine issue of fact in regard to her claim of intentional infliction of emotional distress, and the defendants are entitled to summary judgment on this claim.

VI. Conclusion

In accordance with the foregoing, the defendants' motions for summary judgment are well taken and they are hereby granted.  The clerk shall enter judgment in favor of the defendants on all of plaintiff's claims.  Plaintiff shall pay costs.


Date: September 13, 2006          s\James L. Graham
                                  James L. Graham
                                  United States District Judge